UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| LISA J. MEIER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | No. 4:06-CV-00098-AS |

**MEMORANDUM, ORDER, AND OPINION**

Plaintiff, Lisa J. Meier, seeks judicial review of the denial of her claim for benefits and a period of disability under Title II of the Social Security Act. The Commissioner of Social Security found Ms. Meier was not entitled to a period of disability nor Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416 (I), 423. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Ms. Meier applied for DIB on August 30, 2002, alleging her disabilities began January 1, 1999. (R. 16). The initial claim was denied on October 29, 2002 and her request for reconsideration was denied on March 17, 2003. (R. 36, 43). Ms. Meier then requested a hearing which was held on July 14, 2004 in front of Administrative Law Judge (ALJ) Steven J. Neary. (R. 16). Counsel represented Ms. Meier, and vocational expert Christopher Young testified. *Id*. The ALJ denied benefits on November 26, 2004. (R. 23). Ms. Meier requested for the Appeals Council to review the decision, but her

appeal was denied on January 27, 2006. (R. 4). The ALJ's decision was then made the final decision of the Commissioner. (R. 5).

## I. Background

Statement of Facts

Mrs. Meier was forty-four at the time of the ALJ's decision. (R. 17). She has her GED and is married with one minor child. (R. 311). She worked in the past as an assembler, machine operator, and fork lift driver. (R. 17, 63).

Medical Evidence

On June 24, 2000, Ms. Meier's vehicle was rear ended while waiting at a red light. (R.178). After the accident, she experienced neck pain and stopped working. (R. 312).

On July 20, 2000, Ms. Meier had MRIs taken of her cervical and lumbar spine. (R. 98-99). The cervical MRI displayed degenerative disc disease with a narrowed neural formina and no spinal stenosis. *Id*. The lumbar MRI findings were unremarkable, showing normal signals with the exception of a very mild disc bulge at L5-S1 and some mild degenerative changes of the L4-L5 facets. (R. 100).

From July 2000 to January 2001, Ms. Meier attended physical therapy sessions at Lowell Physical Therapy which resulted in a slightly increased range of motion and slight reduction in pain and tightness, but she still could not return to work. (R. 115). EMG examinations conducted on Ms. Meier's arms in November 2000 and on Ms. Meier's legs in January 2001 returned normal. (R. 141-42).

In February 2001, she started physical therapy at Balance Centers of America. (R. 144-53). The therapist's initial assessment described cervical and lumbar facet stiffness with potential lumbar disc derangement. (R. 153). Ms. Meier experienced dizziness, nausea, lightheadedness, and a slightly ataxic gait while engaging in therapeutic activities. (R. 151). She was diagnosed with a Vestibulo-Ocular Reflex (VOR) stabilization deficit, a right horizontal canal Benign Paroxysmal Positional Vertigo (BPPV) condition, and a possible right posterior canal BPPV. *Id*. Therapists assessed Ms. Meier using the Sensory Organization Test on the Balance Master System. (R. 150). Her composite score of 62 reported in March 2001 was below the normal range of 70 for her age group, however her score improved to 74 in May 2001. (R. 146, 150). As early as April 2001, Ms. Meier's back was improving, but she briefly discontinued physical therapy on April 24, 2001 due to an edematous condition in her legs. (R. 147). She attended physical therapy on May 8, 2001. (R. 146).

On May 16, 2001, she was given a cervical epidural injection of the steroid Celestone by Dr. Timothy King at the Centers for Pain Management which provided her a week's relief. *Id*. The Balance Centers reported on May 21, 2001 that Ms. Meier had improvements in her VOR stabilization and significant improvement in her vestibular system functioning overall. *Id*. She then stopped therapy again for a physician evaluation, and returned in June 2001 for physical therapy on her neck prior to her second cervical epidural shot. (R. 145)

Ms. Meier had her second shot, this time with the steroid Kenalog, on June 18, 2001. (R. 173-74). During this session, Dr. King ordered to discontinue physical therapy because Ms. Meier stated it was worsening her condition. (R. 174). She had significant but only temporary improvements after the second injection and returned to Dr. King on June 25, 2001, at which time the doctor performed a prognostic medial branch block on her to determine whether the nerves in her facets were the transmitting source of her pain. (R. 170). On August 1, 2001, Dr. King performed a radiofrequency neurotomy to block specific nerve signals. (R. 168).

On September 11, 2001, Ms. Meier reported lower back pain, although the procedure in August had significantly relieved her neck pain and she was back to working full time. (R. 166). Dr. King noted a bulging disc at L5-S1 on her lumbar spine MRI and recommended physical therapy for rehabilitation after the August procedure and an epidural for her back. *Id*.

In November, she reported difficulties with her neck and back related to work activities. (R. 164). On November 14, 2001, Ms. Meier had a lumbar epidural injection and during her follow-up visit on November 27, the doctor reported a well over 50% improvement of her back pain. (R. 163).

On February 4, 2002, Ms. Meier underwent a second lumbar epidural injection. (R. 161). At that visit, she reported she was feeling overall 50% better than she had felt before the first injection, but that she had fallen sometime afterward and was concerned the fall had exacerbated her condition. *Id*.

4

In March 2002, Ms. Meier underwent a diagnostic discography to locate painful discs which uncovered a significant internal disc disruption at L5-S1, a posterior fissure at the disc site, and probable epidural spread.  (R. 158-60).

In May 2002, Ms. Meier underwent percutaneous disc decompression of her L5-S1 disc, but in June 2002, she returned to the doctor's office stating the surgery did not reduce her pain.  (R. 154-55).  Dr. King referred her to Dr. Todd Wetzel to determine surgical options.  (R. 154).

On June 26, 2002, Dr. Wetzel determined Ms. Meier had degenerative disc disease at the C5 and C6 level with possible small posterior spur formation and degenerative changes of the posterior elements in the lower cervical spine.  (R. 199).

In July 2002, Ms. Meier stopped going to work and underwent an L5-S1 anterior lumbar interbody fusion procedure.  (R. 62, 196-97).  Before the surgery, Dr. Wetzel had written a letter dated July 3, 2002 to the Indiana Department for Social Security & Disabilities stating that Ms. Meier was to be considered disabled at that time and for up to a year after the surgery.  (R. 189).  In August 2002, Ms. Meier reported that her back pain had improved, but in September 2002, Dr. Wetzel referred her to physical therapy because she was still experiencing lower back pain and numbness and having difficulty sleeping comfortably.  (R. 186, 201).

In October 2002, Dr. Antoinette Dobson, a State agency medical consultant executed a Residual Functional Capacity Assessment based on Ms. Meier's records.  (R. 230-37).  She set exertional limitations to occasional to frequent lifting dependent on

5

weight, standing or sitting for six out of the eight hours in a workday, and unlimited pushing and pulling. (R. 231). Postural limitations included occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (R. 232). She based her conclusions on Ms. Meier's thoracic kyphosis, limited range of lumbar motion, normal strength, and antalgic gait and noted the patient's symptoms were credible. (R. 231, 235).

In November 2002, Ms. Meier fell on ice on her back porch which aggravated recurrent radicular symptoms on her left side. (R. 305). Dr. King administered a bilateral transforaminal injection to treat her pain. *Id*.

Ms. Meier returned to work at Rieter Automotive on June 23, 2003. (R. 312). She injured herself on February 16 at work and stayed on doing light duty until May 24, 2004. *Id*. She received several injections for the February injury, but her symptoms did not resolve. (R. 262). She had lower back and leg pain and numbness and tingling in her calf and hands. *Id*. Ms. Meier's physical examination showed weakness of her left deltoid, but good strength in her triceps, biceps, and wrist extensors. *Id*. An MRI of her lumbar spine showed no abnormal enhancement, but she had a moderate sized central and left lateral disk protrusion at the C6-7 level with potential compression of the left C7 nerve root on her cervical spine MRI. (R. 263-64). She also had a small to moderate sized central and right lateral disk protrusion at the C5-6 level that possibly affected her right C6 nerve root. (R. 264).

Ms. Meier saw Dr. Thompkins on June 21, 2004, for persistent back and neck pain. (R. 260). The doctor ordered a cervical epidural and some physical therapy for strength. *Id*.

In July 2004, Ms. Meier attended sessions at Lowell Physical Therapy. (R. 270-71). The therapists' record shows Ms. Meier was tolerating the treatment fairly, but that she complained of increasing cervical pain and dizziness and was unable to complete isometrics. (R. 271). She did not respond to treatment and stopped therapy in August 2004.

On August 11, 2004, at a follow-up appointment, Dr. Thompkins stated he believed that her pain was from her cervical spine and not her shoulder. (R. 254). Her MRI showed the C5-6 and C6-7 discs had some foraminal encroachment with some compromise and he recommended an anterior cervical discectomy and fusion at both discs. *Id*.

Plaintiff's Testimony

Ms. Meier testified that starting in October 1985, she worked on the assembly lines at the Rieter Automotive factory making soundproofing for automobiles. (R. 313). She had arm surgeries and took leave of work from January 1999 to April 2000. *Id*. She returned to work, but after the automobile accident in June 2000, she did not work for a year. (R. 312, 318). Then she worked from July 2001 to July 2002. (R. 312). During this period, she was having injections at the time and was in tears after work due to hip pain. (R. 319). After having back surgery, she resumed work from June 2003 to May

7

2004. (R. 312). She injured herself at work in February 2004 and stated her back felt like it did before the surgery and that her neck was worse than it was pre-surgery. (R. 320).

Ms. Meier said she has been in constant pain since February and has been unable to take medication for the pain because she has irritable bowel syndrome and the medications give her diarrhea that lasts for three days. (R. 315, 322). She does take Tylenol and uses ice packs for the pain. *Id*. She has migraines every day and sharp pains in her back, hip, and shoulder, with numbness in her left arm. (R. 315-16). Her left hand has been weaker since the accident and she drops things with it and states that it hurts to push a grocery cart or pick up a gallon of milk. (R. 317).

Her daily activities consist of getting up, dressing herself, watching television, and doing laundry. *Id*. Prior to the injury, her hobbies included hunting and fishing, but she does not participate in those activities now because of the pain. (R. 323). She needs assistance from her husband to prepare meals and she has difficulty using the stairs in her home. (R. 317). She drives with her right arm only and goes out to see her daughter's baseball games, to attend doctor appointments, and to grocery shop. (R. 324). She can alternate standing and walking for about forty minutes and she can not tolerate sitting for long without rotating between standing, laying, and sitting. (R. 316, 321). She states the physical therapy and injections have not improved her condition and it is getting worse. (R. 321).

Vocational Expert's Testimony

Christopher Young, a vocational expert, testified that an individual such as Ms. Meier could perform a cashier or sales attendant job and that if she were limited to sedentary exertional level work, she could be an information clerk, credit card clerk, or surveillance system monitor. (R. 326-27). He also stated that a person with limitations as the ones described by Ms. Meier in her testimony would not be capable of any work. (R. 327).

The ALJ's Findings

The findings of the ALJ are as follows:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has engaged in substantial gainful activity at times since the alleged onset of disability.

3. The claimant's disorders of the back are considered "severe" based on the requirements in the Regulations at 20 CFR § 404.1520(c).

4. These impairments do not meet or medically equal any listed impairment.

5. The undersigned finds that the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform light work that does not involve more than occasional postural movements. She is able to lift and carry

9

twenty pounds occasionally and ten pounds frequently. In an eight-hour period, the claimant is able to sit or stand/walk for a total of six hours each.

7. The claimant is unable to perform any of her relevant past work (20 CFR § 404.1565).

8. The claimant is a "younger individual" (20 CFR § 404.1563).

9. The claimant has a high school (or high school equivalent) education (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a reduced range of light work.

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a sales attendant, cashier, information clerk, credit card clerk, and office helper, all of which exist in significant numbers in the national economy.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

The ALJ's Decision

Based on the application filed on August 30, 2002, the ALJ found that "the claimant is not entitled to a period of disability or Disability Insurance Benefits under Sections 216(i) and 223, respectively, of the Social Security Act." (R. 23).

## II. Standard of Review

This court's review of the Commissioner's decision is a limited one. Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. *Schoenfeld v. Apfel,* 237 F.3d 788, 792 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). In making a substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the Commissioner. *Williams v. Apfel,* 179 F.3d 1066, 1071-72 (7th Cir. 1999). That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). *See also, Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (citing

*Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### III. Discussion

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Under section 423(c)(1)(B)(1), it is well established that to receive benefits, a disability must have begun or had its inception during the period of insured status. *Bolinger v. Barnhart,* 446 F. Supp. 2d 950, 954 (N.D. Ind. 2006) (citing *Bastian v. Schweiker*, 712 F.2d 1278, 1280 (8th Cir. 1983). A claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 650 (7th Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds,* 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind. 1982). Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that she was disabled during the period in which she was insured. *Reading v.*

*Matthews*, 542 F.2d 993, 997 (7th Cir. 1976) *(citing, Jeralds,* 445 F.2d at 38-39).

The claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled. As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy.

*Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520*)*. The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Bolinger*, 446 F. Supp. 2d at 955.

Ms. Meier contends the ALJ's RFC was not based upon substantial evidence due to the exclusion of her cervical limitations from the RFC. Pl. Br. at 12. However, the ALJ notes Ms. Meier's cervical limitations in the record demonstrating his awareness of these issues when making his decision. (R. 20).

Ms. Meier also claims evidence from both Dr. Thompkins and her physical therapist was ignored. Pl. Br. at 13. While the ALJ does not have to assess every piece of evidence in making a decision, he is required to "build an accurate and logical bridge

13

between the evidence and the result." *Shramek*, 226 F.3d at 811.  The ALJ accomplished this result in this case.  The ALJ's evaluation referenced Dr. Thompkins and the physical therapist's treatments; it was not necessary for the ALJ to detail all the information.  (R. 20).  The presence of evidence supporting an opposing view to the one taken by the ALJ does not necessitate remand or reversal.  *See, Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1996) (noting that the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").

Ms. Meier also states the ALJ failed to properly weigh the medical evidence at record by giving more weight to the State agency physician's opinion, and not enough weight to the opinion of one of her treating physicians, Dr. Thompkins.  Pl. Br. at 15-17.  Treating physicians opinions do not automatically overrule consulting physician opinions; the merits of both physicians must be considered.  *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).  If there is a difference of opinion between the treating and consulting physicians, the ALJ may choose one opinion over another, so long as that selection is supported by substantial evidence.  *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).  Dr. Thompkins evaluation was that Ms. Meier required surgery, but he did not indicate that her symptoms would persist longer than twelve months.  (R. 254).  He also noted that she had no neural encroachment of her lumbar spine.  *Id*.  These findings do not conclusively establish disability for Ms. Meier and as the consulting physician's

14

opinion is supported by the minimal required substantial evidence, the ALJ's decision was reasonable.

Ms. Meier asserts the ALJ failed to consider relevant evidence of her subjective complaints concerning her symptoms and their effect on her ability to work. Pl Br. at 18. However, the ALJ's evaluation included Ms. Meier's testimony regarding her subjective perception of her symptoms and made reference to these symptoms when discussing her ability to work demonstrating that he did take her statements into account when formulating his decision. (R. 18, 21).

Ms. Meier maintains that the ALJ made an improper credibility finding by failing to adhere to SSR 96-7p requirements and providing no explanation for discounting her allegations. Pl. Br. at 17. An ALJ's determination of the witness' credibility is given deference because he is in the best position to see, hear, and evaluate the witness. *Powers v. Apfel*, 207 F.3d 431,435 (7th Cir. 2000). An ALJ's finding will be reversed only if it is "patently wrong." *Id*. Additionally, "the ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The ALJ must cite to specific reasons consistent with the record to support his rejection of a plaintiff's allegations. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

The ALJ supports his credibility finding with the objective medical evidence that 1) Ms. Meier did not have neurological deficits for twelve consecutive months, 2) she does not require an assistive device to ambulate, 3) and her symptoms would not

15

reasonably continue for twelve consecutive months. (R. 21). He also specifically cited to her sitting, standing, and lifting abilities consistent with the State Agency medical opinion to support his rejection of Ms. Meier's allegations with the objective evidence. *Id*. It is reasonable to conclude that the ALJ's decision was supported with specific reasons and complies with the SSR 96-7 requirements.

     Finally, Ms. Meier contends the ALJ gave the VE incomplete and questionable hypotheticals that led to an unsubstantiated Step Five finding. Pl. Br. at 22. The ALJ's hypotheticals are acceptable because "all that is required is that the hypothetical question be supported by the medical evidence in the record." *Ehrhart v. Secretary of HHS*, 969 F.2d 534, 540 (7th Cir. 1992) (citing *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). The hypotheticals posed by the ALJ meet this requirement as they are consistent with the medical evidence of record. (R. 231). It was alleged the record was incomplete due to exclusion of Meier's postural limitations, but the ALJ's initial hypothetical included these limitations. (R. 326). Even if the hypothetical questions had been incomplete, they would still be acceptable with "a showing that prior to testifying, the vocational expert reviewed the claimant's record containing the omitted information." *Ragsdale v. Shalala*, 53 F.3d 816, 820 (7th Cir. 1995). In this case, the vocational expert was present throughout the hearing and testified to his review of the record. (R. 310, 326).

The ALJ's finding that Ms. Meier performed Substantial Gainful Activity that prohibited an award of benefits provides additional evidence towards the reasonableness of the ALJ's decision. Def. Br. at 6.

## IV.  Conclusion

This court's review is restricted, meaning the court will not independently re-weigh evidence or re-decide credibility issues.  The purpose of this court's review is to ensure that the ALJ's decision is supported by and comports with substantial evidence.  Since the ALJ's decision is supported by substantial evidence, the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**.

**Date: July  9 , 2007**

                                              **S/ ALLEN SHARP**
                                        **ALLEN SHARP, JUDGE**
                                        **UNITED STATES DISTRICT COURT**